## MAIN STREET DEVELOPMENT GROUP, INC.

v.

## TINICUM TOWNSHIP BOARD OF SUPERVISORS and Tinicum Township, Appellants.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2011.
Decided March 21, 2011.
Reargument Denied May 12, 2011.

---

6. Black's Law Dictionary, 539 (9th Ed.2009).

Stephen B. Harris, Warrington, for Appellant, Tinicum Township.

Robert W. Gundlach, Jr., Warrington, and Jordan B. Yeager, Doylestown, for Appellees.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

The Tinicum Township Board of Supervisors (Board) and Tinicum Township (Township) appeal from the order of the Court of Common Pleas of Bucks County (trial court) sustaining the land use appeal of Main Street Development Group, Inc. (Developer), finding that Section 806(i) of the Township's Zoning Ordinance (Ordinance)[1] is invalid as applied to areas of the Township zoned Controlled Commercial, Commercial, Limited Commercial and Planned Industrial, and remanding the matter to the Board to cure Section 806(i) so that it no longer is invalid as applied to the above zoning districts. For the reasons that follow, we affirm.

Developer is the equitable owner of two adjacent tracks of land (the Property) in the Township at the intersection of Durham Road and Route 611 in the controlled commercial zoning district. It totals 25.1379 acres of which 19.694 acres are available for development after removing the area used for a proposed right-of-way. Developer planned to develop the Property with garden apartments, a permitted use in the controlled commercial zoning district, consisting of 12 four-story buildings totaling 192 dwelling units, but was prevented from doing so by Section 806(i), an overlay district restricting development on lots that have prime agricultural soils, no matter the zoning.

The Township is a mostly rural area in Bucks County. The vast majority of the Township (89%) is zoned either rural agricultural (68%) or rural conservation (21%). These zoning districts have as their purpose, among other things, the protection of agricultural and rural areas. The remaining 11% of the Township allows for multifamily residential, commercial and agricultural uses.[2] Section 806(i), an overlay dis-

1. Section 806(i) of the Ordinance, the validity of which is the subject of this appeal, provides:

(i) Prime Farmland and Agricultural Soil Overlay District

(1) Prime Farmland and Prime Agricultural Soils are intended to be conserved and protected to support the agricultural industry in Tinicum Township, and to discourage the unnecessary conversion of Prime Farmland and Prime Agricultural Soils to nonagricultural use.

(2) Prime Farmland and Prime Agricultural Soils are generally shown in Appendix A on the map with the same title and in Figure 9, Prime Agricultural Soils in the Tinicum Township Comprehensive Plan. However, the Applicant or Landowner shall map such areas for review by the Township based on field surveys of:

(i) Prime Agricultural Soils
(ii) Additional Farmland of Statewide Importance

(iii) Locally Important Soils

(3) No more than twenty-five percent (25%) of such areas shall be developed, and the use of the Flexible Development Option or the Village/Hamlet Option are encouraged so that open space areas can be designated to conserve Prime Agricultural Soils.

(4) All development of such areas shall be approved as a Conditional Use.
(Reproduced Record at 2734a.)

2. Specifically, Section 301 of the Ordinance, entitled "Classes of Districts," provides the purposes for each zoning district. The residential conservation and residential agricultural zoning districts have as part of their purpose, the preservation of agricultural lands and rural areas. The other eight zoning districts do not have as their purposes the preservation of agriculture, but rather are meant to allow for various residential, commercial and industrial uses. These zoning districts include the Village Center, Village

trict, limits development to 25% of prime agricultural soils, additional farmland of statewide importance, and locally important soils (collectively, prime agricultural soils) on every lot in every zoning district, regardless of its stated purpose in the Ordinance.

Prime agricultural soils comprise approximately half of the Township's land and are scattered throughout almost the entire Township. (Original Record, overlay map insert to Zoning Ordinance.) The area most impacted by Section 806(i)'s overlay district restricting development to no more than 25% of prime agricultural soils is the 11% of the Township allowing uses other than agricultural uses, which Developer and the trial court term the "development district" and where the Property is located. The "development district," which is comprised almost entirely of prime agricultural soils, has a greater concentration of prime agricultural soils than do the agricultural districts. The net effect of the combination of the underlying zoning and the overlay zoning is that the entire Township is devoted to agricultural uses, with the exception that 25% of land in the "development district," which comprises most of the 11% of the Township not zoned agricultural, including all of the commercial and industrial districts, can be

used for non-agricultural purposes. This amounts to less than 5% and possibly as low as 3% of the Township available for non-agricultural uses.[3]

Because the Section 806(i) overlay district prevented Developer from building the 192 garden apartments as this would disturb more than 25% of those soils, the Developer filed a curative amendment application challenging the validity of Section 806(i) to certain non-agricultural zoned areas, including the controlled commercial zoning district where the Property is located. Developer's curative amendment would add a new subsection (5) to Section 806(i) providing, "This overlay district shall not apply to properties located within the following zoning districts: CC, C, LC and PI."[4] (R.R. at 2378a.) Developer contended that this curative amendment was necessary because Section 806(i), as applied to those nonagricultural districts, is unconstitutional because it is inconsistent with the Pennsylvania Municipalities Planning Code (MPC)[5] as it does not balance between development and agriculture, is inconsistent with the goals and objectives of the Township, makes the "development district" illusory and is exclusionary, and creates conflicts between uses in the Township.[6]

---

Residential, Country Residential, Planned Industrial, Commercial, Controlled Commercial, Extraction and Limited Commercial districts. (Original Record, Zoning Ordinance at 15–16.)

3. The only area of the Township other than the "development district" not zoned agricultural is a small strip along the Delaware River. Much of this land is also comprised of prime agricultural soils and so is under the same development restrictions as the "development district."

4. CC is Controlled Commercial, C is Commercial, LC is Limited Commercial, and PI is Planned Industrial.

5. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

6. Specifically, in its curative amendment application, Developer stated:

(a) The provisions contained in Sections 806(i) and 806(j) of the Township Zoning Ordinance are unreasonable, arbitrary and not substantially related to the purpose of the Zoning Ordinance.
(b) The provisions contained in Sections 806(i) and 806(j) of the Township Zoning Ordinance are unduly restrictive, confiscatory and have an exclusionary impact on the rights of an affected landowner.
(c) The provisions contained in Sections 806(i) and 806(j) of the Township Zoning

The matter then went before the Board, which conducted 21 hearings. In a lengthy decision with several hundred findings of fact, the Board found that Section 806(i) was not unconstitutional and was perfectly compatible with the MPC and all Township ordinances. The Board's findings of fact pertinent to this appeal can be summarized as follows. The Property contained a residential dwelling and a small wooded area, but the large majority of it was currently used for active agricultural fields. Most, but not all, of the Property consisted of prime agricultural soils, leaving approximately five acres available to development after taking into account the preservation of 75% of those soils. This area was not sufficient to allow for the proposed 192 garden apartments but was sufficient to allow for the development of 64 garden apartments if they were served with off-site water and sewage facilities.[7] The area surrounding the Property contained the highest concentration of prime agricultural soils in the Township, and roughly 60% of that area consisted of active farms even though it was zoned commercial and industrial. To preserve its farmland consistent with the dictates of

the MPC, it was necessary that Section 806(i) apply to the entire Township. The Board also found that Section 806(i) did not prevent reasonable growth, and that Developer's witnesses who testified to the contrary did not rely on any studies concerning the effect of Section 806(i) on growth while simultaneously testifying to the necessity of such studies. The Board concluded that Section 806(i) was valid, did not violate the MPC and did not violate Developer's substantive due process rights.

■ Developer appealed to the trial court, which reversed, holding that the Township's objective to protect agriculture was valid, but that the restrictions it imposed on development in pursuit of this goal were unreasonably broad and did not balance the competing agricultural and development interests because Section 806(i) effectively made all non-agricultural zoning districts, including those in the "development district," illusory and effectively turned the entire Township into one large agricultural zoning district in violation of the MPC.[8] The Township then appealed to this Court.[9]

Ordinance are not a valid exercise of the Township's police power and unreasonably infringe upon an affected landowner's constitutionally protected right to freely use and enjoy the landowner's property.
(d) The application of Sections 806(i) and 806(j) do not permit the economically feasible development of apartment complexes. (R.R. at 2376a–2377a.) Section 806(j) is the "Delaware River Wild and Scenic Overlay District." Developer later withdrew its challenge to this section.

7. The parties expend much time and energy in this appeal debating whether Developer really could build 64 units on the Property. Developer contends that this figure is not based on substantial evidence, and the actual number of units that could be built is much less. Because of the way we decide this case, we do not need to address this issue.

8. In making its determination, the trial court made a factual error, repeatedly asserting that Section 806(i) prevented the development of 75% of all land in the Township, rather than just 75% of prime agricultural land, which consists of approximately half of the Township's land. (In fact, a small part of the Property itself is not prime agricultural land and is not covered by Section 806(i)). It is not known to what extent this factual error influenced the trial court's decision.

9. In a land use appeal where the trial court took no additional evidence, this Court's review is limited to determining whether the municipal body abused its discretion or committed an error of law. *Finn v. Zoning Hearing Board of Beaver Borough*, 869 A.2d 1124 (Pa.Cmwlth.2005).

The issues before us are the same as the ones before the trial court, whether the effect of the Section 806(i) overlay district combined with the underlying zoning (1) violates substantive due process by depriving landowners of reasonable use of their land in a "development district" by requiring them to leave undeveloped 75% of their land even though it is zoned commercial, not agricultural; (2) is not consistent with the provisions of the MPC requiring both the protection of agricultural lands and reasonable development; and (3) is consistent with the purposes set forth in the Township's Ordinance and other ordinances concerning the preservation of farmland.[10],[11]

When presented with a challenge to a zoning ordinance, the reviewing court presumes the ordinance is valid. The burden of proof is on the party challenging the ordinance, and where its validity is debatable, it must be upheld. *Boundary Drive Associates v. Shrewsbury Township Board of Supervisors*, 507 Pa. 481, 491 A.2d 86 (1985). A zoning ordinance is a valid exercise of a municipality's police power when it promotes public health, safety or welfare, and its regulations are substantially related to the purpose the

10. The purposes of the Ordinance as well as other Township ordinances go both ways on this issue. For example, Section 101(a) of the Ordinance provides that the purpose of the Ordinance is to protect and preserve agriculture. (R.R. at 3033a.) The Township's land use plan and open space plan contain similar statements. (R.R. at 2273a, 3065a and 3070a.) However, on the other hand, Sections 101(l-m) of the Ordinance provide that the purpose of the Ordinance is also to provide for various types of residential housing and to accommodate reasonable overall community growth and opportunities for development, (Original Record, Ordinance at 2), and Section 1510 of the Ordinance provides that the Ordinance is based on the development district concept. (R.R. at 2738a.) These varying purposes are inconclusive and not sufficient to be a basis for us to decide this case.

11. The Township also argues that the trial court erred by considering the effect of Section 806(i) on the Township as a whole rather than on just the Property itself. In support of its position, the Township cites to Sections 609.1(a) and 916.1(b) of the MPC, 53 P.S. §§ 10609.1(a), *added by* Act of June 1, 1972, P.L. 333, and 10916.1(b), *added by* Act of December 21, 1988, P.L. 1329, both of which provide that a challenged zoning ordinance must prohibit or restrict the use or development of land in which the challenging landowner has an interest. However, this is obviously nothing more than a standing requirement restricting cure challenges to aggrieved parties. Every case cited by both parties examines the effect of the challenged ordinance on the municipality as a whole as well as on the individual property in question, and they do so without discussion or further ado. Indeed, it is difficult to imagine any other way to examine the constitutionality of a zoning ordinance or whether it violates the broad provisions of the MPC than by looking at its entire effect.

The Township also argues that the actual growth patterns of the Township since Section 806(i) was enacted, which Developer argues have been suppressed due to Section 806(i), are not determinative of whether Section 806(i) is exclusionary because Developer conducted no study linking Section 806(i) with actual growth levels in the Township or examining the Township's growth levels compared to those of neighboring municipalities. Because of the way we decide this case, we do not need to consider the issue of whether Section 806(i) restricted the Township's growth in comparison to nearby municipalities. We note, however, that the Township is correct in its argument. In order to find a zoning ordinance invalid for being exclusionary, it is necessary to determine first whether the community in question is a logical area for development and population growth but has not experienced the type of growth expected for such an area. *BAC, Inc. v. Board of Supervisors of Millcreek Township*, 534 Pa. 381, 633 A.2d 144 (1993); *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1978). Here, no such inquiry was undertaken, so this initial requirement cannot be met.

ordinance purports to serve. *Id.; Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). To determine if these factors have been met, Pennsylvania courts use a substantive due process analysis balancing the public interest served by the zoning ordinance against the confiscatory or exclusionary impact of the regulation on individual rights or, in other words, examine the reasonableness of the restriction on land use in light of the deprivation of the landowner's freedom thereby incurred. The party challenging the constitutionality of a zoning provision must establish that it is arbitrary, unreasonable and unrelated to public health, safety, morals and general welfare. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. 2, 820 A.2d 143 (2002); *Boundary Drive; Hopewell Township Board of Supervisors v. Golla*, 499 Pa. 246, 452 A.2d 1337 (1982); *National Land and Investment Company v. Kohn*, 419 Pa. 504, 215 A.2d 597 (1966).

Keeping these standards in mind, it is necessary to examine the purpose of overlay districts and how they may fit into the overall land use scheme of a municipality. First, a municipality creates a comprehensive plan, which contains a statement of objectives concerning future development, a plan for land use, transit, etc. Section 301 of the MPC, 53 P.S. § 10301. The municipality then enacts a zoning ordinance, the purpose of which is to implement the comprehensive plan. Section 601 of the MPC, 53 P.S. § 10601. The zoning ordinance must be generally consistent with the comprehensive plan; if it is not, the municipality must amend its comprehensive plan. Section 603(j) of the MPC, 53 P.S. § 10603(j). Thus, the zoning ordinance takes the general goals laid out in the comprehensive plan and translates them into the regulation of specific uses in order to implement the comprehensive plan.

The MPC then sets forth various requirements for the zoning ordinance. With regard to agriculture, Section 603(g)(1) provides that "zoning ordinances shall protect prime agricultural land," and Section 603(h) states, "[z]oning ordinances shall encourage the continuity, development and viability of agricultural operations" and may generally not restrict them where agriculture traditionally has been present. In addition, Section 604(3) provides, "The provisions of zoning ordinances shall be designed to preserve prime agriculture and farmland considering topography, soil type and classification, and present use." This section shows that the municipality must consider soil type at the time it determines which areas should be zoned for agricultural uses.

Even though the MPC mandates that the zoning ordinance protect agriculture and prime agricultural lands, it also requires that the zoning ordinance facilitate reasonable development. Sections 604(1), (4) and (5) provide that the zoning ordinance shall be designed "to promote, protect and facilitate . . . coordinated and practical community development," "[t]o provide for the use of land within the municipality for residential housing [including] a reasonable range of multifamily dwellings," and "[t]o accommodate reasonable overall growth, including population and employment growth and opportunities for development of a variety of residential dwelling types and nonresidential uses." Thus, the MPC requires a balancing between agriculture and development.

Turning to the role overlay districts play in this general scheme, the MPC does not define or mention overlay districts, but they have become common tools of land

use in Pennsylvania.[12] An overlay district creates a framework for conservation or development allowing for a new type of development or imposing restrictions that is superimposed over the zoning districts on all or part of a municipality. The purpose of an overlay district is to create specific and targeted provisions that conserve natural resources or realize development objectives *without unduly disturbing the expectations created by the existing zoning ordinance. See Hock v. Board of Supervisors of Mount Pleasant Township,* 154 Pa.Cmwlth. 101, 622 A.2d 431 (1993). In other words, overlay districts supplement existing zoning districts; they do not supersede them either in fact or practice.[13]

Our Supreme Court's decisions in *Hopewell Township* and *C & M Developers* grapple with whether zoning ordinances promoting agriculture and restricting growth have struck the required balance between the two, albeit where the underlying zone was agricultural and not, as here, where between 95% and 97% of the Township is required to be used for agricultural purposes due to the combination of the underlying zoning and the overlay district. In *Hopewell Township,* our Supreme Court held that a zoning ordinance limiting residential subdivisions in prime agricultural zones to a maximum of five one-and-one-half-acre plots regardless of the size of the original tract unduly restricted development and did not strike the required balance because it would force large farms to remain farms indefinitely. (For example, the owner of a 140–acre farm could only subdivide seven and one-half acres with the remaining 132½ acres having to continue as a farm.) *Id.* at 258–59, 452 A.2d at 1343–44.

*C & M Developers* illustrates the same principle. In that case, Bedminster Township established an agricultural preservation district covering 90% of the township in which 60% of the prime farmland and 50% of the farmland of statewide or local importance on any lot in the agricultural preservation district of more than 10 acres had to be preserved. In addition, on that portion of the land available for development, only single-family lots of at least one acre could be subdivided. The Court held that the 50–60% set-aside requirements on the 10–plus acre properties reasonably balanced agriculture with development, but that the one-acre subdivision requirement did not, so that the ordinance as a whole was unreasonable. *Id.* at 9–10, 23, 820 A.2d at 147–48, 156.

■ While those cases are not directly apropos because they address restrictions in an agricultural zone, what they teach us is that there must be an appropriate balance in the zoning ordinance between agricultural uses and development. Combined with the underlying zoning, Section 806(i) requires that three-quarters of all the land zoned for commercial, industrial or, as here, multi-family residential purposes, must remain untouched except by farming, transforming these districts into quasi-agricultural districts in direct contradiction to the stated purposes of these districts. Simply put, a zoning ordinance that requires between 95% and 97% of the land in the Township to be used for agricultural purposes simply does not balance the need for development and agricultural uses.

Not only does the Township Ordinance not balance between the preservation of agriculture and other uses, the overlay district unreasonably disturbs expectations

---

**12.** The Township itself has several overlay districts in addition to Section 806(i).

**13.** *Well Grounded: Using Local Land Use Authority to Achieve Smart Growth,* John R. Nolan, Environmental Law Institute, 2001, p. 209–10.

created by the existing zoning ordinance. In *Hock*, Mount Pleasant Township's zoning ordinance required a minimum lot size of three acres for the construction of single-family dwellings in the open space zoning district and a minimum lot size of two acres for single-family dwellings in the agricultural residential zoning district. The Mount Pleasant Zoning Board found that one of the justifications for the large minimum lot size in the open space zoning district was to preserve farmland and the practice of agriculture. In holding that the minimum lot size was unconstitutionally restrictive, we examined the stated purposes of both the agricultural residential and open space zoning districts, showed that the stated purpose for the agricultural zoning district was to preserve and protect prime farmland but the stated purpose for the open space zoning district had nothing to do with agriculture, and concluded that the preservation of agriculture could not be a valid justification for the larger minimum lot requirements in the open space zoning district than in the agricultural residential zoning district. We stated:

> Accordingly, this court concludes that the township's averred agricultural justification for the three-acre minimum lot size in Open Space Districts is unsupported by the very terms of the ordinance and therefore is not reasonable and is insufficient to justify the lot area requirement.

*Hock*, 622 A.2d at 434. As in *Hock*, Section 806(i) effectively creates agricultural districts out of districts with non-agricultural stated purposes, albeit through a different mechanism, completely changing the expectations created by the Ordinance in the non-agricultural districts.

Because the effect of Section 806(i), combined with the underlying zoning, causes the entire Township to become a de facto agricultural zone, it unduly disturbs the expectations created by the existing zoning ordinance, disrupts the balancing between preserving agriculture and allowing development as mandated by the MPC, and unreasonably restricts Developer's use of its land. As such, because the trial court properly found that Section 806(i) is unconstitutional as applied and violates the MPC, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 21st day of March, 2011, the order of the Court of Common Pleas of Bucks County, dated May 19, 2010, is affirmed.