# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Coast Propane, LLC,  :
:
                Appellant  :
:
          v.  :    No. 185 C.D. 2015
:
Falls Township Zoning Hearing  :    Argued: October 5, 2015
Board and Falls Township  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED: November 10, 2015**

East Coast Propane, LLC (ECP) appeals from the Order of the Court of Common Pleas of Bucks County (trial court) which denied ECP's land use appeal from the Decision of the Falls Township (Township) Zoning Hearing Board (ZHB), thus affirming the ZHB. The ZHB: (1) denied ECP's appeal from the Township Zoning Officer's determination that the proposed use of its Property as a propane storage business is not permitted in the HI-A Heavy Industrial A District (HI-A District); (2) denied ECP's request for a use variance from Section 209-32.3.B of the Township Zoning Ordinance (Ordinance); and (3) denied ECP's challenge to the substantive validity of the Ordinance. On appeal, ECP argues that the ZHB erroneously interpreted the Ordinance, that its proposed use is permitted

by right in the HI-A District, and that the ZHB erred by not finding that the Ordinance is substantively invalid. Discerning no error, we affirm.

We begin with a review of the applicable provisions of the Ordinance. Section 209-32.3 of the Ordinance governs the HI-A District. The purpose of the HI-A District is to provide for "product distribution and warehousing . . . fuel sales at locations both advantageous to the industrial user and safely and aesthetically buffered from residential and other incompatible uses." (Section 209-32.3.A of the Ordinance, R.R. at 453a.) Principal and **permitted** uses include "[p]roduct distribution and warehousing" and "[p]lumbing, heating and roofing and building material yards and fuel sales." (Section 209-32.3.B.(3), (7) of the Ordinance; R.R. at 453a.) Relevant **prohibited** uses include:

> (b) The manufacture, handling, storage or transferring of basic or semi[-]finished chemicals, such as cellulose products, resins, dye stuffs, glue, vegetable, animal or mineral fats or oils, explosives, **combustible gases**, soaps and detergents, fertilizers, asphalt and tar products.
>
> . . . .
>
> (e) **Except as provided herein**, the **storage of fuels** or explosive materials **in bulk**.

(Section 209-32.3.D.(1)(b), (e) of the Ordinance (emphasis added), R.R. at 453a.)

ECP entered into an agreement of sale to purchase the subject Property, which is located in the HI-A District. The Property consists of two parcels and the area is approximately 4.44 acres. Located on the Property are two existing single-family homes, serviced by two separate driveways, that are currently in use as residences. A vacant gravel lot, serviced by a third driveway, is also located on the

2

Property. This vacant lot has an access drive to a vacant office and garage. A guarded perimeter fence secures the central part of the Property. Surrounding the Property to the west, north and east are mostly industrial uses, including a compressed natural gas station located to the west. To the south, the Property is bordered by a residential community consisting of manufactured homes.

ECP filed a letter of intent with the Township Zoning Officer to use the Property for "propane fuel sales, distribution, storage of products incident to sales and distribution and the sales and repairs of propane powered vehicles." (ZHB Decision, Findings of Fact (FOF) ¶ 80.) ECP proposed "to situate four (4) above-ground liquid propane storage tanks, each capable of holding 30,000 gallons of liquid propane, on the Property." (FOF ¶ 21.) ECP planned to use the existing vacant office and garage located on the Property for business purposes and to service company vehicles. In addition, ECP intended to permit the current residents of the two single-family homes to remain on the Property.

The Zoning Officer denied ECP's proposed use because the Ordinance prohibited the "storing, handling and transferring of combustible gases." (FOF ¶ 80.) ECP filed an application with the ZHB appealing the denial and also requesting a variance from Section 209-32.3.D.(1)(b) of the Ordinance to use the Property to operate a propane storage business. ECP later amended its application to include a substantive challenge to the validity of Section 209-32.3.D.(1)(b). Hearings ensued before the ZHB.

ECP presented the testimony of its President and several witnesses qualified as experts in the areas of: (1) civil engineering; (2) traffic engineering; (3) land planning and interpretation of zoning ordinances; and (4) design, construction, and operation of propane storage facilities and the handling and composition of propane. The Township presented the testimony of an expert in the field of land planning and zoning, its Zoning Officer, its Engineer, and its Fire Marshal. Three residents testified in opposition to ECP's application.

The ZHB determined that, through its witnesses' testimony, ECP "withdrew all proposed uses on the Property except a propane storage business." (ZHB Decision at 15.) The ZHB determined further that ECP's witnesses' testimony revealed that

> the operation of the proposed use on the Property would involve large tanker trucks periodically coming onto the Property, filling four (4) 30,000 gallon propane storage tanks with liquid propane, and smaller trucks ("bobtails") being filled with propane from the tanks and leaving the site to deliver the propane to residential, commercial or industrial customers who use propane for heating purposes.

(ZHB Decision at 15.) Based on all of the evidence presented and its interpretation of Section 209-32.3 of the Ordinance, the ZHB concluded that the proposed use of the Property as a propane storage business was not permitted by the Ordinance.

The ZHB first determined that the proposed use was prohibited by Section 209-32.3.D.(1)(b) because propane is a "combustible gas." The ZHB pointed out that "the natural state of propane is in a vapor (gas) form" and, "[i]n order to remain in liquid form, the testimony revealed the propane must remain under high

4

pressure." (ZHB Decision at 16.) The ZHB found that propane is a "combustible gas" based on ECP's witnesses' testimony "that if propane leaks or spills from the trucks or tanks on the Property, and mixes with the proper amount of oxygen," it becomes a gas which "will combust if it is exposed to an ignition source." (ZHB Decision at 16.) "[T]he ZHB concluded that while the intent is to handle, store and transfer propane in liquid form, it could easily revert to its natural state as a combustible gas due to human error or equipment malfunction." (ZHB Decision at 16.) In addition, the ZHB, relying on testimony of the Township's planning expert, determined that "many of the chemicals listed in Section 209-32.3.D.(1)(b) after the phrase, 'basic or semi[-]finished chemicals such as . . .' are themselves finished chemicals, such as, fertilizer, asphalt, soap and detergent that, like propane, require no additional process to become finished," and that this section would, therefore, apply to propane. (ZHB Decision at 16.)

Second, the ZHB determined that the proposed use was prohibited by Section 209-32.3.D.(1)(e) of the Ordinance. The ZHB found that "the phrase, 'Except as provided herein', which precedes the Ordinance language prohibiting the storage of fuels in bulk" in Section 209-32.3.D.(1)(e) does not allow for such storage because there "was no specific testimony demonstrating that there are one or more exceptions to the prohibition against storing fuels in bulk." (ZHB Decision at 17.)

Third, the ZHB found that the proposed use was not permitted as "product distribution and warehousing" under Section 209-32.3.B.(3) of the Ordinance. The ZHB determined that, in order "[f]or distribution to occur on the Property,

5

customers would be required to be able to come onto the Property to acquire product, either retail or wholesale, which is not proposed." (ZHB Decision at 17.) Instead, distribution occurs at the homes or businesses of ECP's customers when the propane is transferred from the delivery trucks to the smaller propane tanks for use as heating fuel on the customers' properties. (ZHB Decision at 17.) The ZHB accepted the testimony from the Township's witnesses that, "in order to have warehousing, you must have a 'warehouse' building in which product may be stored." (ZHB Decision at 17.) The ZHB similarly found that the proposed use does not qualify as "fuel sales" under Section 209-32.3.B.(7) "because there is no sales activity involving the transfer of money and product to customers occurring on the Property." (ZHB Decision at 18.)

Fourth, the ZHB determined that ECP did not prove that it was entitled to a use variance to permit the proposed use on the Property. The ZHB found that ECP's evidence did not prove that there are any unique conditions associated with the Property and that the evidence "showed that the proposed use . . . would be contrary to the public health, safety and welfare." (ZHB Decision at 20.) The ZHB determined that the proposed use, which involves the handling, storage and transfer of propane, presented a danger that would adversely affect the nearby residential development in which there are homes located within 200 feet of the proposed storage tanks.

Finally, the ZHB determined that ECP did not present any significant testimony that supported its substantive validity challenge to Section 209-32.3.D.(1)(b), which was based on the faulty premise that the proposed use is

6

permitted either as "product distribution and warehousing" or "fuel sales." (ZHB Decision at 21.) Moreover, even if "Section 209-32.3.D.(1)(b) of the Ordinance [would] subsequently [be] declared substantively invalid," the ZHB found that "the proposed use on the Property remains prohibited by Section 209-32.3.D.(1)(e), the validity of which was not challenged by [ECP], and which applies directly to the proposed use as the 'storage of fuels in bulk'." (ZHB Decision at 23.) The ZHB stated further that "[t]here is no similar prohibition against the storage of fuels in bulk in either the HI-Heavy Industrial District or the MPM-Materials Processing and Manufacturing District, thus the use is not excluded from the Township." (ZHB Decision at 23.)

Accordingly, the ZHB concluded, *inter alia*, that: (1) the proposed use "is not permitted by the Ordinance"; (2) the use was prohibited by Sections 209-32.3.D.(1)(b) and 209-32.3.D.(1)(e) because the use "involves the handling, storage and transferring of combustible gases" and "the storage of fuels in bulk"; (3) ECP did not meet its burden of proving that it was entitled to a variance; (4) the proposed use "would adversely alter the essential character of the [surrounding] neighborhood . . . and would be detrimental to the public welfare"; (5) there was no conflict or "ambiguity in the provisions of Section 209-32.3 of the Ordinance"; (6) "[t]he Ordinance does not unconstitutionally prohibit the use proposed on the Property in the Township"; and (7) "Section 209-32.3.D.(1)(b) does not unreasonably restrict the development of [P]roperty within the HI-A [D]istrict." (ZHB Decision, Conclusions of Law ¶¶ 4-11.)

7

ECP appealed the ZHB's Decision to the trial court, which affirmed. In an opinion accompanying its Order, the trial court determined that the ZHB did not abuse its discretion in denying ECP's appeal because Section 209-32.3.D.(1)(e) specifically and unambiguously prohibits the storage of fuels in bulk. The trial court opined further that "Section 209-32.3.B(3) which includes 'product distribution and warehousing' as a permitted use and Section 209-32.3.B(7) [which includes] 'fuel sales' as a permitted use does not trump the specific language found at subsection (1)(e) prohibiting storage of fuels in bulk." (Trial Ct. Op. at 9.) Finally, the trial court upheld the ZHB's denial of ECP's validity challenge and its request for a variance. This appeal followed.[1]

---

[1] As ordered by the trial court, ECP filed, pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925, a timely Statement of Errors Complained of on Appeal (1925(b) Statement). Therein, ECP briefly set forth the facts, the issues before the ZHB, the determination of the trial court and the statement that, on appeal, it "plans to make the following arguments (which are set forth in further detail in the Notice of Land Use Appeal and incorporated herein by reference)":

> The Court of Common Pleas committed an error of law and an abuse of discretion in (a) upholding the ZHB Decision; (b) failing to find that the proposed use is permitted by right on the Property; (c) failing to grant a variance to allow the proposed use on the Property; and (d) failing to determine that the provisions of Section 209-32.3.D(1) of the Zoning Ordinance are substantively invalid.

(1925(b) Statement at 2, R.R. at 458a.) In its opinion filed pursuant to Rule 1925(a) (1925(a) Op.), the trial court states that ECP has waived all issues on appeal because ECP has not provided the required "clear statement of the grounds for the appeal with a sufficient degree of particularity identifying the specific issues that [ECP] intends to address in the appeal." (Trial Ct. 1925(a) Op. at 3.) The trial court opines that ECP's "vague and undefined assertion of error is tantamount to a complete failure to identify the grounds for the appeal . . . and . . . should result in a waiver of all issues that could have been raised." (Trial Ct. 1925(a) Op. at 3.) At the end of its 1925(a) opinion, the trial court restates its reasoning on the merits as set forth in its initial opinion accompanying its Order denying ECP's appeal. Neither ECP nor the Township address, in the briefs filed with this Court, the trial court's conclusion that ECP has waived all issues on appeal due to its insufficient/vague 1925(b) Statement. Instead, ECP sets forth five

*(Continued…)*

8

On appeal,[2] ECP raises several issues.[3] First, ECP argues that its proposed use is permitted by right under the Ordinance because it constitutes "product distribution and warehousing" and/or "fuel sales." ECP asserts that, when the provisions of the Ordinance are construed broadly as required to give ECP the benefit of the least restrictive use of its Property, the proposed use is permitted as of right under the plain meaning of "product distribution and warehousing" and "fuel sales." ECP contends that, because these terms are not defined in the Ordinance, the ZHB erred by not construing these terms in accordance with their common meanings and resolving any doubt in favor of ECP.

As recently explained by this Court:

"Zoning Boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law." Greth

specific issues in its Statement of Questions Involved, to which the Township has filed a responsive brief. Because here, the trial court set forth its reasons for denying ECP's appeal in its initial opinion accompanying its Order and ECP filed a 1925(b) Statement asserting certain errors by the trial court, the trial court did not need to guess which issues ECP was appealing; thus, ECP has not waived all issues on appeal. See Hess v. Fox Rothschild, LLP, 925 A.2d 798, 803 (Pa. Super. 2007) (holding that a 1925(b) statement is the functional equivalent of no statement if it is too broad or vague to permit the court to identify the issues the appellant is raising on appeal); Commonwealth v. Dowling, 778 A.2d 683, 686 (Pa. Super. 2001) (holding that a 1925(b) statement does not provide enough specificity for meaningful review if the court must guess what issues the appellant is appealing).

[2] "When the trial court takes no additional evidence, our scope of review is limited to determining whether the zoning hearing board committed an error of law or an abuse of discretion." Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board, 109 A.3d 358, 363 n.8 (Pa. Cmwlth. 2015).

[3] ECP is not challenging the ZHB's denial of ECP's request for a use variance in its appeal to this Court.

9

Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township, 918 A.2d 181, 187 (Pa. Cmwlth. 2007) (citation and quotations omitted). "[T]he Board is required to apply the terms of the Zoning Ordinance as written rather than deviating from those terms based on an unexpressed policy." Id.

. . . .

The Board also has an obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use when interpreting its own Zoning Code. Albert v. Zoning Hearing Board of North Abington Township, . . . 854 A.2d 401, 405 ([Pa.] 2004); Church of the Saviour v. Tredyffrin Township Zoning Hearing Board, . . . 568 A.2d 1336, 1338 ([Pa. Cmwlth.] 1989).

Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board, 109 A.3d 358, 366 (Pa. Cmwlth. 2015). With these principles in mind, we turn to ECP's argument that its proposed use is permitted as of right in the HI-A District as "product distribution and warehousing" and/or "fuel sales."

ECP argues that its proposed use falls within the plain and ordinary meanings of the terms "distribution" and "warehousing." ECP contends that its proposed use meets the definition of "distribution," which is defined as "the process by which commodities get to final consumers, including storing, selling, shipping, and advertising." (ECP's Br. at 26 (quoting Webster's New World College Dictionary).) ECP asserts that the courts have defined distribution broadly and there is no provision in the Ordinance that narrows "distribution" to that which occurs on the Property. ECP argues further that its proposed use also meets the definition of "warehousing," which means "to place or store in a warehouse." (ECP's Br. at 29 (quoting Webster's New World College Dictionary).) Thus, ECP contends, a "warehouse" is a place where goods are stored and that our courts have

10

defined "warehousing" by the function that it serves as a place to store goods. See Sears, Roebuck & Co. v. Power, 134 A.2d 659, 661-62 (Pa. 1957) (noting that the property was used "for storage" and "serviced by a regular flow of heavy trucks"). ECP argues that there is no provision in the Ordinance that requires that the term "warehousing" be limited to only uses involving physical buildings. ECP contends that the Superior Court has held that warehouses do not have to be conventional buildings to constitute warehouses. See Commonwealth v. Atlantic Refining Co., 74 Pa. Super. 393, 395-96 (1920) (holding that storage tanks used to hold oil that was subsequently distributed to customers through the company's delivery trucks constituted "warehouses" for purposes of mercantile license taxes). Even if a "warehouse" must be a structure, Section 107 of the Municipalities Planning Code[4] defines "structure" as "any man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land." 53 P.S. § 10107. ECP asserts that, under this definition, the proposed storage tanks are structures.

Upon review, we agree with ECP that its proposed use falls within the plain meaning of the term "distribution." By delivering propane to its customers, ECP is essentially distributing its product. However, we conclude further that the proposed use does not fall within the plain meaning of the term "warehousing." As stated by ECP, the definition of "warehousing" is to place or store in a warehouse. This requires a further definition of the term "warehouse." A "warehouse" is commonly defined as "1. A building, or part of a building used for the storage of retail goods, furniture . . [; or] 2. A shop; now esp. a large wholesale or retail

_____

[4] Act of July 31, 1968, P.L. 805, as amended.

11

store." Shorter Oxford English Dictionary Volume 2, 3581 (5th ed. 2002). Although a propane storage tank may fall within the definition of a structure because it is man-made, propane storage tanks clearly are not buildings. Moreover, the cases relied upon by ECP for the conclusion that the storage tanks are "warehouses" are readily distinguishable. Sears did not involve storage tanks, but an actual building, and at issue was whether the landowner's use of the property as a warehouse met the ordinance's restriction on warehouses that were not on the same premises as a retail store or showroom, which it did not. Sears, 134 A.2d at 660-62. Atlantic Refining is not a zoning case and addressed whether the manufacturer of petroleum was required to pay a mercantile tax or gross receipts tax on the sale of petroleum directly from the tank wagons that was withdrawn from storage tanks; the Superior Court analogized the tanks to warehouses for tax purposes. Atlantic Refining, 74 Pa. Super. at 394-96.

The wording of the Ordinance provides that "product distribution **and** warehousing" are one permitted use; therefore, even though the proposed use can be characterized as distribution of propane, the warehousing component is missing from the proposed use. Accordingly, we conclude that the ZHB did not err by finding that the proposed use was not permitted as "product distribution and warehousing" in the HI-A District under Section 209-32.3.B.(3) of the Ordinance.

ECP next argues that the proposed use is permitted under Section 209-32.3B.(7) of the Ordinance in the HI-A District as "fuel sales." ECP contends that "sales" is defined as "the selling of goods or services." (ECP's Br. at 33 (quoting Webster's New World College Dictionary).) ECP asserts that the ZHB

12

erroneously concluded that the proposed use does not constitute "fuel sales" because there is no sales activity involving the transfer of money and product occurring on the Property.

Although the proposed use may be deemed to include "fuel sales" because ECP is selling propane to homeowners and businesses, our inquiry cannot end with this conclusion because the Ordinance provides not only for permitted uses, but also prohibited uses as well. Here, the ZHB found that the proposed storage and distribution of propane is prohibited in the HI-A District pursuant to Section 209-32.3.D.(1)(b) because it involves the handling, storage or transferring of a combustible gas. If the ZHB did not err in making this finding, permitting the proposed use based solely on the fact that the use involves "fuel sales" would be contrary to the stated purpose of the HI-A District, which is to **safely** permit such sales. As stated previously, the purpose of the HI-A District is to provide for "product distribution and warehousing . . . fuel sales at locations both advantageous to the industrial user **and** safely and aesthetically buffered from residential and other incompatible uses." (Section 209-32.3.A of the Ordinance (emphasis added), R.R. at 453a.) Our Courts have consistently recognized that "[a] significant factor in determining the reasonableness of land use restrictions in a zoning ordinance is whether they are consistent with [the] stated purposes of the particular zoning district." Keinath v. Township of Edgmont, 964 A.2d 458, 462 (Pa. Cmwlth. 2009) (citing Hock v. Board of Supervisors of Mount Pleasant Township, 622 A.2d 431, 434 (Pa. Cmwlth. 1993)). "A municipality has the right to reasonably limit an owner's absolute right to use his or her property with zoning ordinances designed to protect or preserve public health, safety and welfare." Id.

13

(citing Cleaver v. Board of Adjustment of Tredyffrin Township, 200 A.2d 408, 412 (Pa. 1964)).

We now turn to whether the ZHB erred by finding that the proposed use is prohibited by Section 209-32.3.D.(1)(b) of the Ordinance because propane is a combustible gas. ECP challenges the ZHB's finding by arguing that the proposed use does not involve a combustible gas, but liquid propane, and propane is not combustible in its liquid form. For purposes of the proposed use, the propane would remain in liquid form. ECP asserts that the ZHB erred by speculating that something could go wrong that might cause the liquid propane to become a gas.

Section 209-32.3.D.(1)(b) prohibits, in relevant part, "[t]he manufacture, handling, storage or transferring of basic or semi[-]finished chemicals, such as . . . combustible gases . . . ." (Section 209-32.3.D.(1)(b) of the Ordinance, R.R. at 453a.) Several of ECP's witnesses testified as to whether propane is a combustible gas and the proximity of the Property to residential uses.

Kenneth Amey testified on behalf of ECP as an expert in land planning and interpretation of zoning ordinances. Amey testified that he was aware that "liquid propane is a gas first," that under pressure propane becomes a liquid, and that if propane "is then released from pressure[,] . . . it becomes a combustible gas again." (Hr'g Tr. at 36, November 12, 2013, R.R. at 144a.) Amey testified further that if propane "leaked it would return to a gaseous state when it combines with oxygen." (Hr'g Tr. at 37, R.R. at 145a; FOF ¶ 46.) Amey also testified that propane, in a liquid state, would be considered a flammable liquid. (Hr'g Tr. at 41, R.R. at 149a;

14

FOF ¶ 47.) Finally, he testified that the Property "abuts a manufactured home community to the rear" and that there are residences located on the Property itself resulting in "people living right next door" to the proposed use of the Property. (Hr'g Tr. at 32, R.R. at 140a; FOF ¶ 45.)

Matthew Hiltz testified on behalf of ECP "as an expert in the field of design, construction and operation of propane storage facilities and the handling of propane." (FOF ¶ 63.) Hiltz testified that when liquid propane comes into contact with oxygen it becomes a gas, which in turn becomes explosive if mixed with the correct amount of air and exposed to an ignition source. (Hr'g Tr. at 24, 36, December 12, 2013, R.R. at 226a, 238a; FOF ¶¶ 68-69.) Hiltz testified further that the closest home to the proposed location of the storage tanks on the Property would be approximately 200 feet. (Hr'g Tr. at 43, R.R. at 245a; FOF ¶ 70.)

Christopher Mohler also testified on behalf of ECP "as an expert in the field of design, construction and operation of propane storage facilities and the handling and composition of propane." (FOF ¶ 73.) Mohler testified regarding the penetrability of a propane storage tank. It was Mohler's opinion that a storage tank could be penetrated, resulting in a hole; however, the tank would not explode. (Hr'g Tr. at 75, R.R. at 277a; FOF ¶ 76.) Instead, the propane would be coming out of the tank at high pressure and, if the propane then mixed with the correct amount of oxygen and was ignited by an ignition source, the flame "would look like a blow torch." (Hr'g Tr. at 75, R.R. at 277a; FOF ¶ 76.) Mohler testified that "[t]here would be no flame until it met the ignition point, probably a couple feet away from the tank." (Hr'g Tr. at 75, R.R. at 277a; FOF ¶ 76.) Finally, Mohler

15

testified that, because of the risk associated with bulk storage of propane, the industry is heavily regulated requiring extensive insurance coverage naming the Commonwealth of Pennsylvania as an additional insured. (Hr'g Tr. at 66, R.R. at 268a; FOF ¶ 75.)

The Township's witnesses also testified regarding the close proximity of residential uses to the proposed use of the Property and the safety issues surrounding the proposed use. Its Zoning Officer, Thomas Bennett, testified that, based on the testimony presented before the ZHB, he believed that the proposed use of the Property had changed from what was originally proposed in ECP's letter of intent to the "bulk storage of combustible gas." (Hr'g Tr. at 88-87, R.R. at 288a-89a; FOF ¶ 81.) Bennett testified further that well over 100 mobile homes are located within one quarter mile of the Property. (Hr'g Tr. at 92, R.R. at 294a; FOF ¶ 85.) The Township's Fire Marshal, Richard Dippolito, testified as to his concerns related to the placement of the storage tanks in close proximity to residential homes. (Hr'g Tr. at 158, R.R. at 360a.) Specifically, Dippolito testified that, although there are safety features, if something failed due to human error the residents of the homes in close proximity of the propane storage tanks would be in substantial danger. (Hr'g Tr. at 158, R.R. at 360a; FOF ¶ 117.) It was Dippolito's opinion that the proposed use would be detrimental to the public welfare. (Hr'g Tr. at 158, R.R. at 360a; FOF ¶ 118.)

The foregoing testimony shows that the ZHB's finding that propane is a combustible gas is supported by the record. The testimony also supports the ZHB's determination that, because propane is a combustible gas and the storage

tanks are located as close as 200 feet from residential homes, the proposed use of the Property, which consists of the handling, storage and transfer of liquid propane, "would be contrary to the public health, safety and welfare." (ZHB Decision at 20.) As stated by the ZHB, "[i]t may be that the proposed use would never cause any problems or issues for the residents that live nearby; however, the risk associated with the proposed use on the Property is too high for the ZHB to gamble that nothing will happen." (ZHB Decision at 20.)

Accordingly, the ZHB did not err by finding that propane is a combustible gas and, therefore, ECP's proposed use is prohibited by Section 209-32.3.D.(1)(b).[5]

Next, ECP argues that the Ordinance is substantively invalid because certain sections are impermissibly vague. It is well-settled that the court reviewing a challenge to a zoning ordinance must presume that the ordinance is valid. Main Street Development Group, Inc. v. Tinicum Township Board of Supervisors, 19 A.3d 21, 26 (Pa. Cmwlth. 2011). As we have recognized, "[a] zoning ordinance is a valid exercise of a municipality's police power when it promotes public health, safety or welfare, and its regulations are substantially related to the purpose the ordinance purports to serve." Id. at 26-27. The party challenging the ordinance

_____

[5] Because we hold that the ZHB did not err by finding that ECP's proposed use is prohibited by Section 209-32.3.D.(1)(b), we need not address the following issues also raised by ECP in this appeal: (1) Whether any ambiguity regarding the intended meaning of "product distribution and warehousing" and "fuel sales" should be construed in ECP's favor; and (2) Whether the proposed storage and distribution of propane is not permitted due to the Ordinance provision that prohibits "the storage of fuels or explosive materials in bulk" where such provision includes the phrase "[e]xcept as provided herein," and a prior subsection of the Ordinance expressly permits "fuel sales." (ECP's Br. at 5-6.)

17

bears the heavy burden of proving that the ordinance is invalid, and "where its validity is debatable, it must be upheld." Id. at 26. An ordinance will be found to be vague if "persons of common intelligence must guess at its meaning." Farley v. Zoning Hearing Board of Lower Merion Township, 636 A.2d 1232, 1239 (Pa. Cmwlth. 1994). "'Vague ordinances 'proscribe activity in terms so ambiguous that reasonable persons may differ as to what is actually prohibited,' and invite arbitrary and discriminatory enforcement because they do not set reasonably clear guidelines for law officials and courts.'" Id. (quoting Scurfield Coal, Inc. v. Commonwealth, 582 A.2d 694, 697 (Pa. Cmwlth. 1990)). Unless an ordinance "'fails to convey sufficiently definite warning as to proscribed conduct when measured against common understanding and practices,'" the ordinance will not be deemed unconstitutional even if there is some difficulty in determining "whether a situation falls within the penumbra of statutory language which is challenged as vague." Id. (quoting Slovak–American Citizens Club of Oakview v. Pennsylvania Liquor Control Board, 549 A.2d 251, 253 (Pa. Cmwlth. 1988)).

ECP asserts that the Ordinance is invalid because it permits "fuel sales" in Section 209-32.3.B.(7), but then purports to prohibit, in Sections 209-32.3.D.(1)(b) and (e), "the storage of fuels or explosive materials in bulk" and "storage or transferring of basic or semi[-]finished chemicals, such as . . . combustible gases." (ECP's Br. at 39.) ECP asserts that Sections 209-32.3.D.(1)(b) and (e) of the Ordinance are both impermissibly vague, placing certain provisions in conflict with one another to produce results that are far from sensible.

18

Initially, we note that ECP did not challenge the validity of Section 209-32.3.D.(1)(e) before the ZHB. Accordingly, ECP has waived any challenge to this section of the Ordinance.[6] With respect to Section 209-32.3.D.(1)(b) of the Ordinance, ECP argues that the ZHB erroneously interpreted this section by placing the examples set forth therein into separate categories of prohibitions regardless of whether they are basic or semi-finished chemicals. ECP argues that equally troubling, in the absence of a specific definition in the Ordinance, is that the ZHB accepted an interpretation of the phrase "combustible gases" to include uses that do not involve gases at all.

Upon review, we find ECP's argument that the Ordinance is invalid based on the ZHB's erroneous interpretation of Section 209-32.3.D.(1)(b) unpersuasive. First, we agree with the Township that although ECP couches its validity challenge in terms of the Ordinance being impermissibly vague, what ECP is really challenging is the ZHB's determination that propane constitutes a combustible gas and is, thus, prohibited by Section 209-32.3.D.(1)(b) of the Ordinance. As stated previously, the ZHB determination that propane is a combustible gas is based on substantial evidence; therefore, we will not revisit that issue.

Second, the fact that the ZHB did not accept ECP's planning expert's opinion that the handling, storage, and transfer of propane was not prohibited by Section 209-32.3.D.(1)(b) because propane is a finished chemical, and not a basic

_____

[6] See In re Appeal of Kreider, 808 A.2d 340, 342 n.4 (Pa. Cmwlth. 2002) (noting that "when the parties do not request that common pleas hear additional evidence, any issues or arguments not raised before the ZHB . . . are waived").

or semi-finished chemical, does not render the ZHB's interpretation of Section 209-32.3.D.(1)(b) erroneous. It was well within the province of the ZHB to, instead, accept the Township's planning expert's testimony "that many of the chemicals listed in Section 209-32.3.D.(1)(b) after the [qualifying] phrase 'basic or semi[-]finished chemicals such as . . .' are themselves finished chemicals, such as fertilizer, asphalt, soap and detergent that, like propane, require no additional process to become finished." (ZHB Decision at 16.) Thus, the fact that the items listed in Section 209-32.3.D.(1)(b) as examples of basic or semi-finished chemicals could also be considered finished chemicals does not render this section impermissibly vague as argued by ECP. In other words, Section 209-32.3.D.(1)(b) of the Ordinance does not "'proscribe activity in terms so ambiguous that reasonable persons may differ as to what is actually prohibited.'" Farley, 636 A.2d at 1239 (quoting Scurfield Coal, Inc., 582 A.2d at 697). Therefore, we conclude that the Ordinance is not substantively invalid.

For the foregoing reasons, the trial court's Order is affirmed.


_____
**RENÉE COHN JUBELIRER, Judge**

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Coast Propane, LLC,     :
    :
        Appellant     :
    :
        v.     :   No. 185 C.D. 2015
    :
Falls Township Zoning Hearing     :
Board and Falls Township     :

## **O R D E R**

   **NOW**, November 10, 2015, the Order of the Court of Common Pleas of Bucks County, entered in the above-captioned matter, is hereby **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER, Judge**