# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Provco Pinegood : 
Sumneytown, LLC From The : 
Decision Dated December 4, 2017 : 
of The Board of Commissioners of : No. 1554 C.D. 2018
Upper Gwynedd Township : Argued: June 3, 2019
 : 
Appeal of: Provco Pinegood : 
Sumneytown, LLC : 

BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE ELLEN CEISLER, Judge

**OPINION**
**BY JUDGE SIMPSON**                    **FILED:  July 29, 2019**

## I. Introduction

In this land use appeal, Provco Pinegood Sumneytown, LLC (Developer) appeals from an order of the Court of Common Pleas of Montgomery County (trial court) that affirmed a December 2017 decision by the Upper Gwynedd Township (Township) Board of Commissioners (Commissioners) denying Developer's second application for preliminary land development approval for construction of a Wawa Food Market, which would be comprised of a convenience store and gasoline service station.  The Commissioners' decision included 31 numbered paragraphs identifying specific reasons for denying Developer's application.

Without taking additional evidence, the trial court affirmed the Commissioners on the grounds specified in Paragraph 31 of the Commissioners' decision.  In Paragraph 31, the Commissioners reasoned that Developer failed or

refused to seek special exception relief before the Township's Zoning Hearing Board (ZHB) as required by the Township's Zoning Ordinance. Because Developer's application violated the Zoning Ordinance, it also expressly violated the Township's Subdivision and Land Development Ordinance (SALDO).

On appeal, Developer first contends the Commissioners erred in concluding that a zoning officer's report, made in the context of a land development plan review, was an appealable determination under the Pennsylvania Municipalities Planning Code (MPC).[1] Also, Developer asserts the Commissioners erred in concluding that Developer's failure to appeal the determination was a valid legal basis to deny its application where it had already received a decision from the ZHB permitting a convenience store with a gasoline service station at the property.

Relevant for current purposes, Developer also contends the Commissioners erred or abused their discretion in denying its application based on traffic standards and requirements for safe road access not contained in any Township Ordinance. Further, Developer argues the Commissioners violated its due process rights by refusing to allow it to cross-examine witnesses whose testimony the Commissioners relied upon to support the denial of its second application. Upon review, we affirm, although on a different basis.[2]

---

[1] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101-11202.

[2] We may affirm a trial court's order on different grounds if the reasons stated for our decision are clear on the record. Ness v. York Twp. Bd. of Comm'rs, 81 A.3d 1073 (Pa. Cmwlth. 2013); Guy M. Cooper, Inc. v. E. Penn Sch. Dist., 903 A.2d 608 (Pa. Cmwlth. 2006).

2

## II. Background

Developer owns two contiguous lots (site) located at the intersection of Sumneytown Pike and West Point Pike in a C-Commercial District in the Township. Developer proposed to build a 5,585-square-foot Wawa convenience store with gasoline sales from eight outdoor detached fueling stations (16 fueling lanes), and 56 parking spaces. The fueling stations would be located under a detached 7,150-square-foot A-frame canopy. A convenience store is a retail use permitted by right in the C-Commercial District.

### A. Related Zoning Proceedings

In November 2016, the ZHB issued a decision determining that Developer's proposed gasoline sales use was an accessory use to a by-right principal convenience store retail use. See ZHB Dec., 11/22/16; Reproduced Record (R.R.) at 460a-61a. The decision was appealed to the trial court. On March 23, 2018, in an opinion and order by Judge Daniel J. Clifford, the trial court reversed the ZHB, holding that Developer failed to demonstrate that the gasoline sales use was an accessory use to the convenience store. The trial court remanded the case to the ZHB to determine whether Developer was entitled to a special exception for its proposed gasoline sales use. Developer appealed to this Court, which quashed the appeal as from an interlocutory order. See In Re: Appeal of Bd. of Comm'rs of Upper Gwynedd Twp. (Appeal of Provco Pinegood Sumneytown, LLC) (Provco I) (Pa. Cmwlth., No. 502 C.D. 2018, filed April 3, 2019), 2019 WL 1492781 (unreported).

3

**B. Planning Commission Proceeding on First Application**

Meanwhile, in January 2017, Developer submitted its first preliminary land development application to the Planning Commission. Merck & Co., Inc. (Merck) and Hartford Properties, Inc. (Hartford), two neighboring property owners, were permitted to intervene in opposition to the application. The Planning Commission held five meetings on the application. The Township and Merck presented engineering testimony on alleged traffic, stormwater and other engineering deficiencies. At the final meeting, the Planning Commission voted six to one to reject the application.

**C. Zoning Officer's Determination (Special Exception)**

In addition, after reviewing the application, the Township's specially appointed Conflict Zoning Officer Kenneth Amey (Zoning Officer), notified the Township Manager by letter (copied to Developer and others) that the gasoline sales use required special exception approval under the Zoning Ordinance. Although Developer initially appealed the Zoning Officer's letter regarding the need for a special exception, Developer later withdrew its appeal. Developer took the position that the Zoning Officer's letter to the Township Manager did not constitute either a decision on a permit application or a formal zoning opinion. Rather, Developer interpreted the Zoning Officer's letter as a review letter offering comments on Developer's first application.

**D. Commissioners' Denial of First Application**

At a July 2017 Commissioners' meeting, the parties again presented engineering evidence. The Township and Merck again focused on traffic and

stormwater management concerns.  Due to various deficiencies in the application, the Commissioners voted at the meeting to deny the application.

On August 7, 2017, the Commissioners issued its written decision. The Commissioners set forth 50 specific reasons for denying the application. Paragraphs 18, 20 and 21 addressed stormwater management deficiencies. Paragraphs 26-43 addressed traffic impact design and site ingress/egress deficiencies.  Most notably, a driver exiting the site onto eastbound Sumneytown Pike would not be able to see the required distance to the west (or left) because of a blind curve and a train overpass which blocks the view of oncoming eastbound drivers.  Paragraph 44 addressed parking deficiencies for oversized vehicles, common at other Wawa locations, which lead to the obstruction of traffic. Paragraph 50 addressed the Zoning Officer's letter regarding the need for a special exception for a gasoline sales use.

### E. Second Application

On August 15, 2017, Developer submitted its second preliminary land development application, which was substantially similar to the first application. The Township's engineers again issued review letters to the Township Manager regarding various unresolved deficiencies. Zoning Officer issued a second letter to the Township Manager (copied to Developer and others) again noting the need for a special exception for gasoline sales.  Developer did not appeal Zoning Officer's second letter indicating the need for a special exception.

In October 2017, in response to a review letter from the Township's engineers, Developer submitted revised plans. Zoning Officer issued a third letter to the Township Manager (copied to Developer and others) indicating a special exception would be needed for gasoline sales. Developer did not appeal this letter.

Ultimately, the Planning Commission voted 4-3 to approve the second application subject to two conditions. First, the exit on the western driveway on Sumneytown Pike must have a larger "pork chop" traffic barrier, which would more effectively preclude drivers from making prohibited left turns onto Sumneytown Pike. See R.R. at 1001a. Second, drivers must be prohibited from making left turns onto West Point Pike during the A.M. and P.M. peak hours. Id.

Following the Planning Commission's conditional approval, Merck provided the Township Manager (copied to many others) with updated expert engineering reports regarding unresolved stormwater deficiencies. Merck also provided the Township with an expert engineering report detailing numerous traffic deficiencies.

### F. Commissioners' Denial of Second Application

At a November 2017 public meeting, the parties again presented engineering evidence, including various traffic studies regarding safe stopping distance for egress from the site to Sumneytown Pike, anticipated U-turns and illegal left turns onto West Point Pike during peak hours, and insufficient parking

for trucks and oversized vehicles. The evidence included studies of these types of problems at similarly designed Wawa locations.[3]

At the conclusion of the meeting, the Commissioners voted unanimously, with one abstention, to deny the second application. On December 4, 2017, the Commissioners issued a written decision containing 31 specific reasons to deny the application. Reasons 7 and 8 addressed stormwater management deficiencies. Paragraphs 9-26 addressed traffic design and road access deficiencies. Paragraph 27 addressed the failure to provide parking for oversized vehicles, delivery trucks, landscaping trucks with trailers, recreation vehicles and larger commercial trucks. Paragraph 28 addressed internal site circulation deficiencies.

Paragraph 31 addressed Developer's failure to obtain a special exception for gasoline sales use. The Commissioners noted that Developer failed to appeal the Zoning Officer's determination that the Zoning Ordinance required a special exception for a gasoline sales use. To that end, the Commissioners indicated that in a proceeding to determine whether to approve or disapprove a plan, a zoning officer's interpretation constitutes a determination under the MPC upon which the Commissioners may rely.

---

[3] Merck also presented evidence of unresolved stormwater management deficiencies. In particular, Gary R. Emmanuel, P.E., of O'Brien and Gere, Engineers, Inc. (Merck's Stormwater Engineer), explained Developer's failure to appropriately determine the capacity of existing downstream systems. In particular, Merck's Stormwater Engineer further asserted that Developer relied on erroneous calculations, which resulted in the stormwater system being under-designed.

Addressing the facts here, the Commissioners observed that Developer must appeal the Zoning Officer's determination within 30 days as required by Section 914.1 of the MPC, 53 P.S. §10914.1.[4] The Commissioners further noted that Section 909.1(a)(3) of the MPC, 53 P.S. § 10909.1(a)(3),[5] provides the ZHB with exclusive jurisdiction to hear and render a final adjudication on appeals from a zoning officer's determinations and that failure to appeal renders such determinations binding. Because Developer neither appealed Zoning Officer's determination nor applied for a special exception, the Commissioners determined Developer's proposed development violated Section 195-22.A(8)(c) of the Zoning Ordinance. Developer appealed the Commissioners' decision to the trial court.

## G. Trial Court's Decision and Order

In November 2018, the trial court affirmed the Commissioners' order denying Developer's second application. In so doing, the trial court, in a decision by Judge Wendy G. Rothstein, observed that the rejection of a land development plan may stand if supported by even one of several objections, relying on <u>Robal Associates, Inc. v. Board of Supervisors of Charlestown Township</u>, 999 A.2d 630 (Pa. Cmwlth. 2010). Here, the trial court relied solely on the Commissioners' determination in Paragraph 31. More specifically, the trial court recognized that Section 195-22.A(8)(c) of the Zoning Ordinance requires a special exception for a gasoline service station, regardless of whether it is a primary or accessory use. The

---

[4] Added by the Act of December 21, 1988, P.L. 1329.

[5] Added by the Act of July 4, 2008, P.L. 319.

trial court also noted that the Zoning Officer's second and third determinations became final upon Developer's failure to appeal them within 30 days. See Lower Mount Bethel Twp. v. Gacki, 150 A.3d 575 (Pa. Cmwlth. 2016) (the developer's failure to appeal violation notice within 30 days resulted in conclusive determination of ordinance violation).

Therefore, Judge Rothstein agreed with Judge Clifford's decision in the related zoning case that Developer's proposed development is in violation of Section 195-22.A(8)(c) of the Zoning Ordinance and Sections 168-13.E(6) and 168-13.H of the SALDO based on Developer's failure to obtain a special exception for the gasoline sales operation. Accordingly, the trial court determined the Commissioners' rejection of Developer's second application was validly supported by the Commissioners' reasons for denial set forth in Paragraph 31. Consequently, the trial court affirmed the Commissioners' denial of Developer's second application. Developer appeals.[6]

### III. Discussion

### A. Plan Approval Generally

Section 508(2) of the MPC provides that when a governing body denies an application for plan approval, it shall specify the defects in the plan application, describe the requirements that were not met, and in each case, cite the

---

[6] Where the trial court takes no additional evidence, appellate review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown, 79 A.3d 720 (Pa. Cmwlth. 2013). An abuse of discretion occurs when the governing body's findings are not supported by substantial evidence. Gerryville Materials, Inc. v. Planning Comm'n of Lower Milford Twp., Lehigh Cty., 74 A.3d 322 (Pa. Cmwlth. 2013).

provisions of the ordinance or statute relied upon. 53 P.S. §10508(2). If a plan complies with all objective provisions of the applicable SALDO, as well as all other regulations, the plan must be approved. Robal. However, a single reason, if legitimate, may support the denial of the plan. Robal; Herr v. Lancaster Cty. Planning Comm'n, 625 A.2d 164 (Pa. Cmwlth. 1993). We are also mindful of the deference courts should exercise when reviewing a governing body's interpretation of the ordinances it enacts and applies. Tink-Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd., 986 A.2d 935 (Pa. Cmwlth. 2009).

## B. Zoning Officer's Report

### 1. Argument

Developer first contends Zoning Officer's conclusion that a gasoline sales use requires the applicant to obtain a special exception under Section 195-22.A(8)(c) of the Zoning Ordinance, was not a determination appealable to the ZHB. Citing Section 107 of the MPC, 53 P.S. §10107, which defines an appealable determination as a final action by an officer charged with the administration of any land use ordinance or application thereunder, Developer argues Zoning Officer's report was not a final determination. In short, it was not a final action. In fact, Developer asserts the report did not constitute an action of any kind. Rather, it was merely a comment in a review letter issued to assist the Commissioners in rendering their decision on the second application.

As support, Developer cites the MPC's definition of "report." Section 107 defines a "report" as "any letter, review, memorandum, compilation or similar

writing made by any body, board, officer or consultant other than a solicitor … for the purpose of assisting the recipient in the rendering of any decision or determination." 53 P.S. §10107 (emphasis added). All reports shall be considered recommendatory and advisory, and shall not be binding on the recipient. Id. Moreover, reports are not appealable. Id. As such, Developer contends the Commissioners erred in concluding that Zoning Officer's reports were binding and appealable.

Also, Developer asserts the ZHB rejected Zoning Officer's special exception determination in a separate decision granting Developer's request for zoning relief on neighboring property. The ZHB determined Developer's proposed gasoline sales at that other property qualified as an accessory use permitted by-right in a C-Commercial District, despite Zoning Officer's advice to the contrary. Developer therefore argues it would have been nonsensical to appeal Zoning Officer's report.

Further, Developer acknowledges that the trial court, in a March 2018 decision by Judge Clifford, reversed the ZHB's decision regarding the current property. However, the Commissioners denied Developer's second application in December 2017, prior to the trial court's reversal. Stated differently, the trial court's March 2018 decision could not serve as a valid basis for the Commissioners' 2017 denial of the second application.

11

## 2. Analysis

In the context of a pending land development application, a zoning officer's oral interpretation of a zoning ordinance made directly to an applicant can be an appealable determination under the MPC. N. Codorus Twp. v. N. Codorus Twp. Zoning Hearing Bd., 873 A.2d 845 (Pa. Cmwlth. 2005). Section 909.1(a)(3) of the MPC provides that a zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in matters including "appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit …." 53 P.S. §10909.1(a)(3) (emphasis added). Failure to appeal a zoning officer's determination within 30 days results in the determination becoming binding and unappealable. Section 914.1 of the MPC,[7] 53 P.S. §10914.1; Gacki (zoning violation notice directed to Developer).

Here, however, Zoning Officer issued three letters addressed to the Township Manager, copied to other Township officials and to Developer, covering various points, including that Section 195-22.A(8)(c) requires a special exception be obtained for a gasoline sales use, whether or not it qualifies as a primary or accessory use. On their face, these letters appear to be reports to the *Township* regarding a pending land development application, not an immediately appealable final zoning determination directed to *Developer*. E.g., R.R. at 475a, 975a. In other words, the letters appear on their face to be "reports" rather than final "determinations," as respectively defined in Section 107 of the MPC. 53 P.S. §10107.

---

[7] Added by the Act of December 21, 1988, P.L. 1329.

12

Moreover, much of this dispute was rendered moot in subsequent proceedings on the related zoning case. In Provco I, the Township appealed the ZHB's 2016 decision that Developer's proposed gasoline sales use qualified as an accessory use to a convenience store permitted by-right. Ultimately, Judge Clifford determined that, regardless of the ZHB's decision in the other case involving a convenience store/gasoline sales development on neighboring property, the ZHB had the responsibility to conduct an evidentiary hearing in the Wawa zoning case to determine whether a special exception was required for this particular property. Consequently, in its order granting Developer an evidentiary hearing on the special exception issue, the trial court explicitly reinstated Developer's request for a special exception as opposed to requiring a new, additional finding. See Upper Gwynedd Twp. Bd. of Comm'rs v. Upper Gwynedd Twp. Zoning Hearing Bd., (Mont. C.P., No. 2016-29426, filed March 23, 2018).

As a result, questions about the underlying zoning for the proposed development have not yet been resolved. At this stage of the land development proceedings, it is impossible to determine whether the lack of a special exception, by itself, is a sufficient basis to affirm the Commissioners' actions. Accordingly, we must look beyond the trial court's reliance on the underlying zoning. In particular, we must examine other issues raised in Developer's appeal from the Commissioners' denial.

## C. Safe Road Access
### 1. Argument

13

Developer contends the Commissioners erred and abused their discretion by denying its second application based on Pennsylvania Department of Transportation (PennDOT) traffic policies, standards and specifications for safe road access not contained in any Township ordinance. Under Pennsylvania law, Developer asserts, a preliminary plan must be approved if it meets all specific, objective requirements of the applicable SALDO. Robal; Herr.

Developer alleges Paragraphs 9 through 30 of the Commissioners' decision set forth reasons for denial of the second application based on Developer's failure to comply with PennDOT publications concerning various PennDOT policies and procedures including traffic control, signing standards, and road construction specifications for safe road access. However, Developer argues there are no requirements in the Township's SALDO or any other Township ordinance that would require compliance with PennDOT specifications on non-state-owned roads.

In particular, Developer argues the Commissioners erred in relying on Sections 168-16.B and 168-17.H of the SALDO to support their conclusion that Developer must comply with PennDOT specifications even though no state roads are involved. Section 168-16.B provides: "Development shall be planned, reviewed and carried out in conformance with all Township, [C]ounty, [S]tate and other applicable laws and regulations." R.R. at 58a.

Section 168-17.H of the SALDO provides:

Improvement construction requirements will be completed under specifications of [PennDOT], [the

14

Pennsylvania Department of Environmental Protection or other appropriate state agency, the [County] Soil and Water Conservation District or other appropriate agencies, or the specifications included herein, <u>whichever specifications shall be the more restrictive</u>.

R.R. at 59a (emphasis added).

Developer asserts Section 168-16.B clearly states that compliance with State standards and specifications, including PennDOT standards and specifications, is only required *when applicable*. Developer maintains PennDOT standards and specifications are only applicable where access to a state highway is involved. Therefore, Developer argues, Section 168-16.B of the SALDO cannot require compliance with PennDOT access regulations for roads not under PennDOT jurisdiction.

Developer also contends Section 168-17.H applies to improvement construction specifications detailing the materials and thickness for road construction, such as binder course and asphalt. However, Developer claims this is a far cry from requiring that all roads comply with PennDOT's access requirements.

Developer therefore argues that the Commissioners' rejection of the second application based on the alleged failure to provide safe access is based only on generalized health and safety concerns rather than a specific provision in a Township ordinance. It is an abuse of discretion to deny approval of a preliminary land development plan based on generalized traffic concerns that are not supported by a specific ordinance violation. <u>Valley Run, Inc. v. Bd. of Comm'rs of Swatara</u>

15

Twp., 347 A.2d 517 (Pa. Cmwlth. 1975). Developer further argues a preliminary plan may not be rejected upon non-specific standards such as the potential danger to health, safety and welfare. Scluffer v. Plymouth Twp., 379 A.2d 1060 (Pa. Cmwlth. 1977).

Consequently, Developer claims the Commissioners erred and abused their discretion by denying Developer's second application based on a generalized concern that Developer failed to demonstrate safe road access.

## 2. Analysis

### a. PennDOT Regulations for Driveway Access

Paragraphs 9 through 26 of the Commissioners' decision essentially identify the safety deficiencies in Developer's planned road access to the proposed Wawa. Prior to addressing the traffic issues, the Board observed:

> **NOTE:** Developer is required to comply with the traffic standards of [PennDOT], and any Federal standards adopted thereby, except where the Township has adopted more restrictive standards by ordinance, pursuant to Township Ordinance, Chapter 168 (SALDO), Article VI (Design and Construction Standards), Sections 168-16B. and 168-17.H, [Section 6109(a) of the Vehicle Code, 75 Pa. C.S. §6109] and other applicable authority.

Comm'rs' Op., 12/4/17, at 3.

Pursuant to Section 6109(a) of the Vehicle Code, nothing in the Vehicle Code[8] shall prevent local authorities on streets and "highways" within their

---

[8] 75 Pa. C.S. §§101-9805.

16

boundaries from the reasonable exercise of their police powers. 75 Pa. C.S. §6109(a). Section 102 of the Vehicle Code defines a "highway" as: "The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." 75 Pa. C.S. §102.

Zoning and other land development ordinances such as the Township's SALDO are valid exercises of a municipality's police power that promote the public health, safety and welfare. See Penn Street, L.P. v. E. Lampeter Twp. Zoning Hearing Bd., 84 A.3d 1114 (Pa. Cmwlth. 2014); Main Street Dev. Grp., Inc. v. Tinicum Twp. Bd. of Supervisors, 19 A.3d 21 (Pa. Cmwlth. 2011). As noted above, Section 168-16.B of the Township's SALDO provides that a proposed development shall be planned, reviewed and carried out in conformance with all Township, County, State and other applicable laws and regulations. R.R. at 58a. Section 168-17.H of the SALDO requires that improvement construction requirements must meet not only the specifications in the SALDO, but also comply with the specifications of PennDOT or any other appropriate state agency if those specifications are more restrictive. Id. at 59a.

Here, the Commissioners properly interpreted Sections 168-16.B and 168-17.H of the SALDO as requiring Developer to comply with PennDOT traffic standards for safe access to and from Sumneytown Pike, even though it is not a state highway. If authorized by a zoning or subdivision ordinance, a municipality may apply stricter safety standards to arterial or collector streets. See Shelbourne Square Assocs., L.P. v. Bd. of Supervisors of Twp. of Exeter, Berks Cty., 794 A.2d

17

946 (Pa. Cmwlth. 2002) (township, as authorized by its ordinance, may demand more than minimum safety standards).

### b. Safe Egress to Sumneytown Pike

As discussed above, the Commissioners' denial of Developer's second application must stand if there is one valid reason for disapproval of it. Kassouf v. Township of Scott, 883 A.2d 463 (Pa. 2005); Robal. When a governing body denies an application, its decision must specify the defects found in the application and describe the requirements that were not met. Section 508(2) of the MPC, 53 P.S. §10508(2). In each case, the governing body must cite to the provision of the statute or ordinance upon which it relied. Id.

Here, we focus on Paragraph 11 of the Commissioners' decision. In applying PennDOT's regulations governing safe stopping sight distance (SSSD) for access driveways, the Commissioners determined Developer's second application failed to provide for safe egress onto eastbound Sumneytown Pike from the site. The Township's traffic engineer, Andreas Heinrich, P.E., P.T.O.E,[9] of Heinrich and Klein Associates, Inc. (Township's Traffic Engineer), described SSSD as "a scientific representation that takes into account the velocity of the vehicle, the perception time of the motorist, the wet friction factor of the pavement, and the percent grade of the roadway." See Township's Traffic Engineer's Traffic Review, 11/6/17 (Township Traffic Review), at 5; R.R. at 987a. "The equation accounts for the time the motorist observed an object in/entering the road, the time to react and depress the brake, and the time to bring the vehicle to a halt." Id.

---

[9] Professional Transportation Operations Engineer.

In its entirety, Paragraph 11 states:

11. [Developer] failed to adequately demonstrate that the driveways located on Sumneytown Pike will have safe access, for reasons including, but not limited to, failing to satisfy the minimum Safe Stopping Sight Distance ('SSSD'). The minimum SSSD must exceed the available sight distance. The SSSD shall be calculated with the use of the 85th percentile of the measured vehicle operating speed of the abutting roadway (not the posted speed limit). The SSSD is the absolute minimum acceptable sight distance for driveways and if the measured available sight distance for a proposed driveway does not exceed the minimum SSSD, such driveway shall not be approved. [Developer] measured the minimum acceptable SSSD to be 351 feet and the Township calculated the minimum SSSD to be 363 feet. However, [Developer] also proposes the use of a 'desired sight distance', which it calculated to be 300 feet, instead of the SSSD. The parties then measured the available sight distance to the western Sumneytown Pike driveway, as follows:

Township Traffic Engineer: Available Sight Distance: 265 feet

Developer: Available Sight Distance: 305 feet

Merck Traffic Engineer: Available Sight Distance: 281.5 feet

The [Commissioners do] not find [Developer's] proposed use of the 'desired stopping distance' (300 feet) to be the applicable value necessary to determine compliance of the Development's driveways with the minimum acceptable sight distance. However, even using [Developer's] calculations of the 'desired stopping distance', the location of the western driveway on Sumneytown Pike still fails to fall within the available sight distances calculated by both the Township and Merck. Neither the minimum SSSD nor the 'desired sight distance' are available for safe egress at this location.

19

Furthermore, the western Sumneytown Pike driveway is too close to the Intersection to permit access therefrom, and therefore should be right-in only. This is because the peak-hour (both AM and PM) queue of the eastbound traffic in the through-lanes on Sumneytown Pike is in excess of 600 feet, well beyond the position of the western Sumneytown Pike driveway right-out egress. Additionally, the PM peak-hour queue of the eastbound traffic in the left-turn-lane is approximately 360 feet, which also appears to be beyond the position of the western Sumneytown Pike driveway right-out egress. This becomes of particular concern during the weekday PM peak-hour because the West Point Pike left-turn egress is proposed to be prohibited between 4:00 pm and 6:00 pm, likely increasing the traffic attempting to use the Sumneytown Pike driveway egress (to go east or west on Sumneytown Pike). Furthermore, it is difficult to prohibit drivers using the proposed Sumneytown Pike egress from attempting to cross multiple lanes of traffic on eastbound Sumneytown Pike to reach the eastbound left-turn lane in order to turn onto northbound Church Road, which maneuver is accompanied by a significant probability of a broadside collision with traffic traveling in the center through-lane. There appears to be no point along Sumneytown Pike where there is acceptable SSSD for egress at a location that is also far enough removed from the queues of the eastbound approach of Sumneytown Pike's intersection with West Point Pike, and therefore, all proposed points of egress from the site onto Sumneytown Pike must be eliminated. (*See* PennDOT Publication No. 282; Highway Occupancy Permit Operations Manual, Section 3.4, p 122; 67 Pa. Code §441.8(h)(2)(iv); PennDOT Publication Access Management – Model Ordinances for Pennsylvania Municipalities Handbook, pp. 7-8, PennDOT Policies and Procedures for Transportation Impact Studies, Appendix G., p. 2).

Comm'rs' Op., ¶11 (emphasis in text added, emphasis in citations in original).

In short, the Commissioners determined in Paragraph 11 that Developer's proposed western driveway on Sumneytown Pike, which would

20

provide right-turn-in ingress and right-turn-out egress,[10] failed to meet the minimum SSSD for egress to Sumneytown Pike as determined pursuant to the formula/equation set forth in 67 Pa. Code §441.8(h)(2)(iv). At the Commissioners' November 2017 meeting, Township's Traffic Engineer commented that Developer's application did not provide for safe egress from the site to Sumneytown Pike. See Comm'rs Meeting, 11/20/17, Tr. (C.M.T.) at 87; R.R. at 2050a. Township's Traffic Engineer explained the difference between SSSD, which is based on an analysis of several factors including the actual speed of the vehicles and road conditions, and the "desired stopping distance," which is primarily based on the posted speed limit. C.M.T. at 92; R.R. at 2055a. Citing PennDOT regulations at 67 Pa. Code §441.8(h)(2)(iv), Township's Traffic Engineer indicated that the SSSD calculation is the absolute minimum sight distance acceptable for driveways. C.M.T. at 93; R.R. at 2056a.

Here, Developer's traffic engineer, Matthew Hammond, P.E., of Traffic Planning and Design, Inc. (Developer's Traffic Engineer), calculated the minimum SSSD for the western driveway on Sumneytown Pike at 351 feet. Comm'rs Op., ¶11. Township's Traffic Engineer calculated the SSSD for the western driveway at 363 feet.[11] Id.

---

[10] A second driveway on Sumneytown Pike, located approximately 200 feet from the intersection with West Point Pike would be right-turn-in only. See Township's Traffic Engineer's Traffic Review, 1/6/17 (Township Traffic Review), at 1; Reproduced Record (R.R.) at 983a.

[11] Township's Traffic Engineer calculated the SSSD for the western driveway on Sumneytown Pike for a vehicle traveling at 43 miles per hour (mph) at 351 feet. See Township Traffic Review at 5; R.R. at 987a. For a vehicle traveling at 44 mph, the SSSD would be 363 feet. Id.

21

However, Township's Traffic Engineer calculated the *available* sight distance from the western driveway at 265 feet. Township Traffic Review at 3; R.R. at 985a. Merck's Traffic Engineer calculated the *available* sight distance from the western driveway at 281.5 feet (at best 282 feet). See Century Eng'g Inc.'s Transp. Impact Study Review at 3; R.R. at 1020a. Moreover, Developer's Traffic Engineer calculated the *available* sight distance from the western driveway at 305 feet. See C.M.T. at 92, 129; R.R. at 2055a, 2092a. Consequently, we discern no error in the Commissioners' determination that Developer's second application failed to meet the minimum SSSD requirements for safe egress from anywhere on the site to eastbound Sumneytown Pike.

Further, although the Commissioners rejected Developer's contention that the desired sight distance (based on the posted speed limit of 35 miles per hour) would be only 300 feet, the Commissioners nevertheless noted Township's Traffic Engineer and Merck's Traffic Engineer calculated the *available* sight distance from the western driveway at less than 300 feet. Comm'rs Op., ¶11.

In addition to failing to meet SSSD requirements, the Commissioners also observed that the western driveway on Sumneytown Pike should be only "right-turn-in" (no right-turn-out) because peak-hour eastbound traffic, both A.M. and P.M., on Sumneytown Pike in the through-lanes would queue-up in excess of 600 feet, well beyond the "right-turn-out" egress from the western driveway. Comm'rs Op., ¶11. This determination is also supported by the record. See Township Traffic Review at 6, R.R. at 988a.

22

For these reasons, the Commissioners concluded there appeared to be no point along Sumneytown Pike where there would be acceptable SSSD for egress at a location that is far enough removed from the queues of the eastbound approach of Sumneytown Pike's intersection with West Point Pike. The Commissioners thus concluded that "all proposed points of egress from the site onto Sumneytown Pike must be eliminated." Comm'rs Op., ¶11 (emphasis added).

Based on our careful review of the record, we hold that Paragraph 11 of the Commissioners' decision, by itself, is legally sufficient to support the Commissioners' denial of Developer's second application. Kassouf; Robal. In Paragraph 11, the Commissioners specified the defects in Developer's planned egress onto Sumneytown Pike.

Although Developer took the position that PennDOT's SSSD requirements do not apply to Sumneytown Pike, the Commissioners properly interpreted Section 6109(a) of the Vehicle Code and Sections 168-16.B and 168-17.H of the Township's SALDO as requiring Developer to comply with PennDOT SSSD specifications for driveway design. We note Sumneytown Pike and West Point Pike, even if not state highways, are heavily traveled roads with multiple lanes in each direction. As Township's Traffic Engineer explained, in addition to the inadequate *available* sight distance, the eastbound traffic on Sumneytown Pike queues up in both the through-lanes and left-turn-lane during peak–hour traffic beyond Developer's proposed western driveway.

23

Consequently, the Commissioners' reasons for their ultimate determination in Paragraph 11, that Developer's proposed points of egress from the site onto Sumneytown Pike must be eliminated, are supported by substantial evidence and are in accord with the applicable law. Thus, the Commissioners properly denied Developer's second application on this basis alone. Section 508(2) of the MPC; Kassouf; Robal.

**D. Commissioners' Remaining Reasons for Denying Second Application**

Developer raises several other challenges to the Commissioners' specified reasons for denial of Developer's second application.[12] However, having determined the Commissioners properly denied Developer's second application because egress from any point on the site to Sumneytown Pike is unacceptable, we need not address Developer's challenges to the Commissioners' remaining reasons for denying the plan. Kassouf; Robal.

---

[12] In addition to other traffic design deficiencies, Developer asserts the Commissioners erred or abused their discretion in refusing Developer's request for a waiver or modification from Section 163-19.J of the Township's Stormwater Management Ordinance for the Wissahickon Creek Watershed. Developer also alleges the Commissioners erred or abused their discretion in basing their denial on stormwater management reasons never identified in any Township review. Developer argues the alleged deficiencies in the design of a stormwater management system are minor technical defects that can be corrected by amending the plan and thus cannot serve as the basis for the denial of a preliminary plan. See CACO Three v. Bd. of Supervisors of Huntington Twp., 845 A.2d 991 (Pa. Cmwlth. 2004) (minor defects such as failure to include labels, notations and design calculations in a preliminary plan are not objective defects justifying outright disapproval of the plan; rather, they are minor technical defects that could be corrected by amending the plan).

Developer further contends the Commissioners erred or abused their discretion in denying its second application based on other minor, easily correctable items. Developer cites the reasons stated in Paragraphs 1-6 of the Commissioners' decision.

24

**E. Right of Cross-Examination**

**1. Argument**

In its final argument, Developer contends the Commissioners violated its due process rights by refusing to allow the cross-examination of witnesses upon whom the Commissioners relied in denying the second application. Developer asserts that a fair trial in a fair tribunal is a basic requirement of due process. In re: Murchison, 349 U.S. 133 (1925). Citing DeJohn v. Orell, 240 A.2d 472 (Pa. 1968), Developer maintains that when credibility determinations are made, a party has a fundamental right to cross-examine a witness.

Here, Developer asserts the Commissioners' decision clearly reflects that the Commissioners relied on the testimony of witnesses to support a denial of the second application. However, the Commissioners refused to let Developer cross-examine those witnesses. As a result, Developer claims the Commissioners denied it an opportunity to cross-examine the Township's Traffic Engineer or the engineers who spoke on Merck's behalf. Developer maintains this constituted reversible error. Downey v. Weston, 301 A.2d 635 (Pa. 1973).

**2. Analysis**

As we observed in Miravich v. Township of Exeter, 6 A.3d 1076, 1079 (Pa. Cmwlth. 2010), unlike proceedings before a zoning hearing board, the MPC places virtually no procedural requirements on a governing body's consideration of subdivision and land development proposals. To that end, Section 508(5) of the MPC, provides: "Before acting on any subdivision plat, the governing body or the planning agency, may hold a public hearing thereon after

25

public notice." 53 P.S. §10508(5) (emphasis added). In other words, public hearings are not required. Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown, 79 A.3d 720 (Pa. Cmwlth. 2013); Miravich. Because Section 508(5) of the MPC does not require a public *hearing* on land development applications, we cannot interpret that provision as permitting a right of cross-examination of witnesses at a public *meeting* of the Commissioners. Whitehall Manor; Miravich. Notably, both the terms, "public hearing" and "public meeting," are separately defined and thereby distinguished in the MPC. See Section 107 of the MPC, 53 P.S. §10107.

Moreover, our review of the record does not indicate Developer requested a public hearing on its application here. As such, the Commissioners only considered Developer's second application at a public meeting held on November 20, 2017. Consequently, there was no sworn testimony. At the November 2017 meeting, the Township's solicitor explained to counsel that the meeting was not a hearing. See C.M.T. at 55; R.R. at 2018a. Developer's counsel replied: "I agree." Id.

Further, Developer cites no case law or decisional authority indicating there is a right of cross-examination at a public meeting on a land development application under the MPC. Consequently, we reject Developer's contention that the Commissioners violated its due process rights based on the denial of a non-existent right to cross-examination. Whitehall Manor; Miravich.

26

## IV. Conclusion

For the above reasons, we discern no error or abuse of discretion in the Commissioners' decision denying Developer's second application. Accordingly, we affirm the order of the trial court based on the alternate grounds stated herein.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Provco Pinegood :
Sumneytown, LLC From The :
Decision Dated December 4, 2017 :
of The Board of Commissioners of : No. 1554 C.D. 2018
Upper Gwynedd Township :
 :
Appeal of: Provco Pinegood :
Sumneytown, LLC :

# **O R D E R**

   **AND NOW**, this 29th day of July 2019, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Montgomery County is **AFFIRMED**.

          _____
          ROBERT SIMPSON, Judge